## JASON HARRIS *versus* HAMLIN RAND.

A carrier contracted to carry goods to a particular place and there deliver them to the owner. He carried them to the place, but before the owner had an opportunity to receive the goods, a part of them were lost without the fault of the carrier—it was held that the carrier was not in law entitled to receive any compensation for the carriage of the goods lost.

ASSUMPSIT for the freight of a quantity of salt, from Connecticut to M'Duffie's ferry in Piermont, in this state.

The cause was tried here at May term, 1828, upon the general issue, when it appeared in evidence, that the

plaintiff received the salt at Middleton, in Connecticut, on the 4th November, 1820, and agreed to transport it up Connecticut river, and deliver it to the defendant, at Kimball's landing, in Haverhill, in this state, common dangers excepted. The plaintiff carried it up the river in a boat as far as Charlestown, in this state, where the defendant met him, and told him it was so late in the season that it was doubtful whether he would be able to go up to Kimball's landing with his boat, that he must go up the river as far as he could, and there land the salt, and give the defendant notice, and that the defendant would receive the salt wherever it might be so landed. The plaintiff went up the river as far as M'Duffie's ferry, which is about thirteen miles below Kimball's landing, when it became impossible to go any farther with the boat. He arrived at the ferry just before night, and the next day he unladed the salt, and gave notice to the defendant, who lived about twenty miles above, about an hour before sunset on the same day. On the following day, the defendant sent down teams to receive the salt, but in the night previous, the river having changed its current, the salt was washed away and lost, without any fault or neglect on the part of the plaintiff.

A verdict was taken by consent for the plaintiff, subject to the opinion of the court upon the foregoing case.

*Bell,* for the plaintiff.

*Jon. Smith,* for the defendant.

*By the court.* We have given an opinion in this case, on a former occasion, and the only change in the statement of the facts which a new trial has produced is, that it now appears the defendant agreed to receive the salt at any place where the plaintiff might be compelled to stop. Upon the case, as before stated, we were of opinion, that, as the plaintiff had agreed to carry the salt to Kimball's landing, he could not be entitled to freight by carrying it to any place below that landing, unless the defendant actually accepted it at a place below. And

we think the law of the case is not changed, by the new circumstance now introduced into the statement. A previous agreement to accept, at a different place from that mentioned in the original contract, was not such an acceptance as entitled the plaintiff to freight. It changed the place of delivery, and made a delivery at another place equivalent to a delivery at Kimball's landing. It in fact made M'Duffie's ferry the place of delivery.

But it was not enough, that the salt was carried to the place of delivery. The contract was, that the plaintiff should not only carry, but deliver. And he was not entitled to freight until the contract was performed on his part, by an actual delivery. Abbot on Shipping, 308 ; 4 Mass. Rep. 91, *Lane* v. *Penniman.*

It is well settled, that a carrier is responsible for goods until they are actually delivered, and a mere landing of the goods is no delivery. The delivery of the goods is as much a part of his duty as the carriage. 15 Johns. Rep. 39, *Ostrander* v. *Brown* ; 3 Wilson, 429, *Golden* v. *Manning* ; 2 W. Bl. 916, S C ; 5 D. & E, 389, *Hyde* v. *The Navigation Company from T. to M* ; Owen, 57 ; 2 Esp. N. P. C., 693.

*Verdict set aside.*