| 16 | 213 |
| f118 | 227 |

### HUIE *VS.* BAILEY.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, FOR THE PARISH OF RAPIDES, JUDGE KING OF THE FIFTH DISTRICT PRESIDING.

The plaintiff having struck out his special endorsement on the bill, *at the close* of the trial, is perhaps irregular, but cannot prejudice his rights against the endorser.

The holder of a bill or note endorsed in blank by the payee, can recover, notwithstanding there were subsequent endorsements in full upon it; and he may strike them out or not as he pleases.

So, where a person endorses a bill or note to another, whether for value or for the purpose of collection, and comes again into the possession of it, he is to be regarded as the *bona fide* holder, and can recover, even if there be one or more subsequent endorsers in full, without producing any receipt or endorsement back to him; and whose names he may strike out or not as he thinks proper.

The holder of a bill need not use active diligence to sue the acceptor or endorser; he may be passive and forbear to sue, if he does not so agree to give time to the acceptor as to preclude himself from suing, or suspend his remedy to the prejudice of the drawer or endorser.

A delay, without *sufficient consideration* or new security, being a *nudum pactum*, will not discharge other parties, if the holder has not entered into such an agreement as will disable him from suing the acceptor.

WESTERN DIST. So, where the holders released the acceptors from the prison limits, allowing
October, 1840.      them to leave the state, on a written agreement " that it should in no way
                     prejudice the holder's rights, which he has or may hereafter have for his
HUIE                 debt," does not discharge the endorser.
vs.
BAILEY.        A release of acceptors from the prison limits, when arrested under a *ca. sa.,*
                    does not discharge the endorser; *provided nothing is done to discharge
                    the judgment,* so as to prevent the subrogation of the endorser to the
                    holder's rights, in case he pays.

   This is an action against the defendant, endorser of a bill
of exchange, drawn on Thomas Toby & Brother, and by them
accepted.   The bill was protested at maturity and notice
given to the endorser.

   The defendant pleaded a general denial ; and averred that
he was not liable, because the plaintiff had released the ac-
ceptors, who were first liable.    That having obtained a judg-
ment against Toby, he failed to avail himself of it to enforce
payment of the debt, as he was bound to do, but actually re-
leased him from confinement on a *ca. sa.,* and allowed him to
leave the state on a definitive arrangement between them :
that Toby had a certain time given him to pay the amount
of the bill ; by reason of all such indulgence given by the
plaintiff, and prolongation of time, this respondent claims to
be released from his endorsement.

   The evidence shows, that the plaintiff had obtained judg-
ment against the acceptors of the bill in New-Orleans, and
arrested Thomas Toby, on a *ca. sa.* against both of them, and
he gave security, and entered into bond for the prison limits.
While in the limits, the plaintiff entered into the following
arrangement with him and his brother :

   " HUIE *vs.* TOBY & BROTHER.—" We agree, that the can-
celling the bond signed by us in this case, for the prison lim-
its, with H. Lockett as security, shall in no way prejudice any
rights which said Huie has or may have for his debt and
interest hereafter."                        " THOS. TOBY."
      " Dec. 23, 1837."                      "SAM'L TOBY."
            " Witness, H. Lockett."

Toby was thus released from the prison limits, and allowed to go to Texas and return.

There was judgment against the defendant, for the amount of the bill sued on, and he appealed.

*Dunbar* and *Hyams* for the plaintiff, contended that the plaintiff had a right to strike out his own endorsment, at any time before judgment.

2. In relation to the agreement and release of the acceptors from the prison bounds,it worked no injury to the endorser ; as the plaintiff never for a moment put it out of his power to sue or enforce his debt against them. This is the true rule of testing the effect of the release.

*Brent*, for defendant, strenuously insisted, that the defendant was released by the conduct of the plaintiff; and denied his right, after the case was closed and argued, to cure any omissions whatever, and the judge erred in allowing him to strike out his own endorsement. 1 *Martin, N. S.*,373; 5 *Idem.*, 15 ; 6 *Idem.*, 45 ; 7 *Idem.*, 255 ; 2 *Louisiana Reports*, 193.

2. The endorser is relieved, in consequence of time being granted and indulgence extended to the acceptors. The holder of the bill agreed with the acceptor that he might go to Texas, with the understanding that he was to pay when he returned. Here such time was given, as would be reasonably employed in making the journey to Texas and back again. This was a clear discharge of all the subsequent parties to the bill. 3 *Kent's Commentaries,* 111 ; *Bayley on Bills,* 223 ; *Chitty on Bills,* 443.

3. The objection that this agreement was made *without a valuable consideration,* and was therefore *nudum pactum,* is not tenable; the same consideration upheld this agreement, which lies at the bottom of all agreements to give time, viz: The expectation or promise of being punctually paid at the end of the time given. This court held in the case of *Millaudon* vs. *Amons,* that an agreement by the holder with the maker to receive payment in goods, at a deferred day, was such an one as could have been enforced, and, therefore, liberated the

endorser. The only difference between that case and this is, that there payment was made *in goods* at a deferred day, and here it was to have been made in money at a deferred day. On all other points the cases are analogous ; judgment, therefore, should be reversed. *3 Martin, N. S., 596 ; 7 Idem., 3.*

*Garland, J.*, delivered the opinion of the court.

The defendant is sued as the endorser of a bill of exchange, drawn at Quintana, in Texas, by M'Kinnly & Williams, on Thomas Toby & Brother, New-Orleans, for three thousand five hundred and seventy dollars, payable at six months from the 25th December, 1835. The bill was accepted, and afterwards protested for non-payment, and due notice given to the endorser. A suit was brought against the acceptors, prosecuted to judgement, and a *capias ad satisfaciendum* finally issued, and Toby & Brother arrested. They gave a bond to remain in the prison bounds, and so remained from the 16th of October to the 23d December, 1837, when the plaintiff agreed to cancel the bond and discharge them from the bounds, they agreeing, in writing, that his doing so should "in no way prejudice any right which said Huie has or may have for his debt and interest hereafter." He further permitted them to go to Texas, on a promise they would pay the debt on their return, in June or July following. This was done without the consent or knowledge of the defendant, who says in his answer, he is thereby discharged from all liability. He further says, the plaintiff having given time to the acceptors, without his assent, has discharged him.

We find a bill of exception in the record, to the opinion of the District Court, permitting the plaintiff to strike out his special endorsement on the note, after the trial had closed, and the judge had ordered a judgment to be entered against the defendant. This was irregular, perhaps, but we cannot say it was absolutely unlawful, more particularly, as the defendant cannot be injured by it. We have considered the case, without reference to the time of erasing the endorsement, but exclusively as to the right, so the act does not prejudice the party.

The question submitted is, whether the holder of a promissory note upon which there is a subsequent special endorsement, can erase it, and recover against the maker or anterior endorsers. The early decisions of this court were that he could not, and such was the opinion of several authors and jurists. But the court, nearly three years ago, were induced to change their opinion, and decided that the holder of a bill or promissory note, endorsed in blank by the payee, might recover on it, notwithstanding there were subsequent endorsements in full upon it, and he may strike them out or not, as he pleased. We have maturely revised all the previous opinions, and adhere to the doctrine laid down in the cases in 12 *Louisiana Reports*, 93--6. It has long been settled, that a blank endorsement may be erased from a bill by a *bona fide* holder, and we see no sufficient reason why an endorsement that has been filled up may not be stricken out, as well as one that may at any moment be filled up. The name of the party on the paper essentially transfers it. We think the true rule has been established by the Supreme Court of the United States, in the case of *Dugan* vs. *The United States*; 3 *Wheaton* 173, 183, where it was held that " if a person who endorses a bill to another, whether for value or for the purpose of collection, comes again to the possession thereof, he is regarded, until the contrary appears in evidence, as the *bona fide* holder and proprietor; and shall be entitled to recover thereon, notwithstanding there may be on it one or more endorsements in full, subsequent to the endorsement to him, without producing any receipt or endorsement back to him from either of such endorsers, whose names he may strike out or not, as he thinks proper." 6 *Cowen*, 445; 3 *Johnson's Cases*, 263; 11 *Johnson*, 53; 16 *Johnson*, 73; 1 *Cowen* 387; 17 *Massachusetts Reports*, 618; 3 *Kent's Commentaries*, 114.

The next point in the case is, whether the plaintiff by permitting the acceptors of the bill to go to Texas, with a promise to pay on their return, was such a giving or prolongation of time for payment as will discharge the defendant, who is endorser.

*Western Dist.*
*October*, 1840.

HUIE
*vs.*
BAILEY.

The holder of a bill or note, endorsed in blank by the payee, can recover, notwithstanding there were subsequent endorsements in full upon it, and he may strike them out or not, as he pleases.

So, where a person endorses a bill or note to another, whether for value or for the purpose of collection, and comes again into the possession of it, he is to be regarded as the *bona fide* holder, and can recover, even if there be one or more subsequent endorsers in full, without producing any receipt or endorsement back to him, and whose names he may strike out or not, as he thinks proper.

WESTERN DIST.
*October*, 1840.

HUIE
*vs.*
BAILEY.

The holder of a bill need not use active diligence to sue the acceptor or endorser; he may be passive and forbear to sue, if he do not so agree to give time to the acceptor as to preclude himself from suing, or suspend his remedy to the prejudice of the drawer and endorser.

Chitty says there is no obligation of *active diligence* on the part of the holder, to sue the acceptor or any other party, and he may be *passive* and *forbear* to sue, as long as he pleases; but he must not so *agree* to give time to the acceptor, *as to preclude himself from suing him, and suspend his remedy against him, to the prejudice of the drawer and endorsers*. To make any agreement for indulgence, obligatory, it must be for an adequate consideration. *Chitty on Bills*, 8th *American edition*, 441, 442, 443, 446; 3 *Kent's Commentaries*, 2d *edition*, 111, 112. The old opinion was, that any agreement to give time, discharged the drawer and endorsers, whether without consideration or not; but the later doctrine is, a delay *without sufficient consideration*, and without taking any new security, being a *nudum pactum*, will not discharge other parties, if the holder has not entered into such an agreement as will disable him from suing the acceptor. *Chitty on Bills*, 447. It not appearing that any consideration was made the plaintiff for releasing Thomas Toby & Brother from the prison bounds, and letting them go to Texas, and the defendant not appearing to have sustained any injury from it, we do not think he ought to be discharged for that reason.

A delay without *sufficient consideration* or new security, being a *nudum pactum*, will not discharge other parties, if the holder has not entered into such an agreement, as will disable him from suing the acceptor.

So, where the holder released the acceptors from the prison limits, allowing them to leave the state, on a written agreement "that it should in no way prejudice the holder's rights, which he has or may hereafter have for his debt," does not discharge the endorser.

The last ground taken by the defendant is, that he is discharged by the release of Toby & Brother from the prison bounds, in New Orleans, when arrested under the *ca. sa.* In England, it is very probable that such an act would have discharged the endorser and acceptors also, if there was no special agreement to the contrary; but in this state, it is not certain that it will. It has been decided, that a creditor by releasing his debtor on a *ca. sa.*, does not thereby release the debt: 7 *Martin, N. S.*, 163; and a plaintiff may take out a second *ca. sa.* after discharging the defendant from the first: 8 *Idem.*, 315.

The true test of this question is, has the plaintiff done any thing to discharge the judgment he has obtained against Thomas Toby & Brother; or deprived himself of any right to which the defendant would be entitled, in the event of his being subrogated to the judgment? If the defendant should now pay the plaintiff the amount of the judgment and be

subrogated, as he would of right be, he might issue execution on the judgment, and seize property if any could be found. If the acceptors, Toby & Brother, have no property, *a capias ad satisfaciendum* may issue, to take their bodies and confine them in prison or in the bounds.. He can avail himself of all the process and remedies allowed by law ; and, besides, has the express obligation of Thomas and Samuel Toby, that none of the rights of the plaintiff shall be impaired by the discharge and cancelling of the bond ; he can, therefore, transfer them to defendant, whenever he shall pay the amount for which he is endorser, and can proceed to collect it in any manner authorized by law, subject to such equities as may exist between the parties.

WESTERN DIST.
*October*, 1840.

A release of acceptors from the prison limits when arrested under a *ca. sa.*, does not discharge the endorser, provided nothing is done to discharge the judgment, so as to prevent a subrogation of the endorser to the holder's right, in case he pays.

It is, therefore, ordered and adjudged, that the judgment of the District Court be affirmed, with costs.