(Decided June 20th, 1895.)

## JOSEPH KLECKA *vs.* LENA ZIEGLER AND G. HENRY ZIEGLER, HER HUSBAND.

*Specific Performance of Contract by a Married Woman to Convey Her Real Estate.*

A contract by a married woman to convey her real estate, executed jointly with her husband, is valid under Code, .Art. 45, sec. 2, and specific performance of such contract will be decreed.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), sustaining a .demurrer to the bill of complaint and dismissing the same. The case is stated in the .opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and. BOYD, JJ.

*Hermon L. Emmons* (with whom was *Howard M. Emmons* .on the brief), for the appellant.

*S. S. Field* (with whom was *Samuel Regester* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

In the bill of complaint in this case, filed by the appellant, it is alleged that Lena Ziegler, being seized and possessed of two leasehold lots of ground, situate in Baltimore City, aquired by her under the last will of Anton Zenker, with her husband, leased to the appellant one of these lots for a term of two years, with the privilege of renewing the same for a further period of three years; that the lease contains a clause providing that at any time during the continuance of the demise or any renewal thereof, the appellant should " have the right to purchase" the demised premises, including the dwelling house on the west side of Dallas street, " upon tendering in payment therefor the sum of $3,300, with all accrued rent, and the said Lena Ziegler and George H. Ziegler, her husband, their heirs and assigns, shall execute to him a good and sufficient deed of conveyance therefor;" that the appellant notified the appellees or his intention to purchase, tendered the price, and performed all the requirements on his part to be performed, but the said Lena and her husband have refused to make a conveyance of the property as they ought' rightfully to do, and thereupon it is prayed that the agreement may be specifically enforced. The appellees demurred, and from the decree dismissing the bill the appellant has appealed.

The contention of the appellees is, that the agreement, the performance of which is prayed for in the bill, is void as to Lena Ziegler, because at the date of the execution she was a married woman. The solution of the question thus raised depends upon the construction to be given to the statutes of our State applicable to the subject; for it must be conceded that at common law a *feme covert* had no power to make a contract to convey her lands that could be enforced either in law or equity. By the second section of Art. 45 of the Code, as enacted in 1861, all the property,

real and personal, belonging to a married woman at the time
of her marriage, and all subsequently acquired, " she shall
hold for her separate use, with power of devising the same
as fully as if she were a *feme sole*, or she may convey the
same by a joint deed with her husband, &c. This section
was repealed by the Act of 1872, ch. 270, and a substitute
enacted in lieu thereof. This substitute contains the whole
of the original section, with two additions. By the first
addition, where a husband is lunatic, &c., she may convey
her property as a *feme sole;* by the second, it is provided
that " any married woman may be sued jointly with her hus-
band in any of the Courts of this State, or before any jus-
tice of the peace, on any note, bill of exchange, single bill,
bond, contract or agreement, which she may have executed
jointly with her husband, and may employ counsel and de-
fend such action or suit separately or jointly with her hus-
band; and judgments recovered in such cases shall be liens
on the property of defendants, and may be collected by ex-
ecution or attachment in the same manner as if the defen-
dants were not husband and wife; provided, that in all cases
where a married woman has made such contract or agree-
ment as a *feme sole*, under section seven of this Article she
may be proceeded against as therein provided." Referring
to this statute in *Smith* v. *State*, 66 Md. 218, where the
cause of action was a bond executed by a wife jointly with her
husband, it was said, " there is no ambiguity, for the language
is broad and comprehensive, and is applicable to every mar-
ried woman who has executed any bond jointly with her hus-
band.   *   *   When the Legislature says she may be sued
on any bond executed jointly with her husband, can the
judicial department undertake to say that the law-makers
meant that she shall not be sued on some bonds executed
jointly with her husband? Such a determination could only
be reached by a species of judicial legislation not sanctioned
by any authority and extremely dangerous if once estab-
lished as a precedent." The same reasoning will apply to
contracts such as that with which we are now dealing. In

plain terms the statute provides that a *feme covert* may be sued jointly with her husband, " on any contract or agreement " which she may have executed jointly with him. No words limiting the wife's power to make such contract are employed (except that she must execute it jointly with her husband); although the statute is an addition to and forms part of the Article of the Code which regulates the rights of *feme coverts* to and their powers over their estates, real as well as personal.

The construction we have thus given to this statute harmonizes, we think, with the general purposes characterizing the legislation of the State in relation to the rights of married women in their property, and their powers in dealing with it. We have said in *Hale & Hume* v. *Eccleston*, 37 Md. 510, that the main purpose of the second section of Article forty-five was to enable married women to maintain a separate credit, independent of their husbands. By the adoption of this section the separate estate was made a legal limitation, and the right and power of disposition was required to be exercised by her with the concurrence of her husband ; but notwithstanding all this, the property of the wife was not liable, even in equity, for her debts and incumbrances, except for such, as she with her husband, by express terms or clear implication, charged thereon. To enlarge her capacity to deal with her estate, and thereby enable her the more efficiently to maintain a separate credit, the Legislature has conferred upon her, by the Act of 1872, the power to deal with her statutory estate as fully as if she were a *feme sole ;* provided always, she has the concurrence of her husband. Her capacity to contract, which formerly was merely a power to charge or encumber her separate estate, enforceable only in a Court of Equity, since the passage of that Act has been enlarged, and has now become a legal right, by the exercise of which she can at law bind herself personally, to the same extent as if she were a *feme sole.* She may now be sued jointly with her husband on any contract or agreement she may execute

jointly with him, and judgments so obtained against her may be collected in the same manner as if the defendants were not husband and wife.

The trend of judicial decision in this country seems to be in the direction of placing liberal constructions in favor of the wife upon statutes of this description. In *Kingsley v. Gilman,* 15 Minn. 59, under a statute declaring that a *feme covert* shall hold " to the same extent as before marriage," the Court said, " if upon becoming a *feme covert* she has not the ' right * * to contract," to convey, " then she is not owner to the same extent as if she were a *feme sole.*" In *Love* v. *Watkins,* 40 Cal. 561, the power to make an executory contract for the sale of land is maintained only after a most liberal construction of all the provisions of the statute " taken together." *Baker* v. *Hathaway,* 5 Allen, 104 ; *Union Brick Co.* v. *Lorillard,* 44 N. J. Eq. 3 ; *Dankel* v. *Hunter and wife,* 61 Pa. St. 384 ; *Dreutzer* v. *Lawrence,* 58 Wis. 595 ; *Baily* v. *Pearson,* 29 N. H. 85 ; *Felkner* v. *Tighe,* 39 Ark. 362 ; *Frarey* v. *Wheeler,* 4 Oregon, 190.

These authorities are cited, not as being decisive of this case, but as illustrative of the manner in which Courts have regarded statutes like that of the Act of 1872 and the principles they have applied when called upon to construe them. It follows from what has been said that there was error in sustaining the demurrer.

*Decree reversed and cause remanded.*

(Decided June 20th, 1895.)